COMMONWEALTH vs. REMEL AHART.

No. 04-P-476.

Middlesex. February 17, 2005. - May 4, 2005.

Present: CYPHER, KANTROWITZ, & COWIN, JJ.

*Controlled Substances. "School Zone" Statute.*

The evidence at a criminal trial was sufficient to convict the defendant of pos-
session of cocaine with intent to distribute, in violation of G. L. c. 94C,
§ 32A(*a*), and possession of cocaine with intent to distribute in a school
zone, in violation of G. L. c. 94C, § 32J, where, in addition to evidence
that the defendant had in his possession ten bags of cocaine, there was
evidence that the defendant carried a razor (the use of which, according to
expert testimony, enabled a drug dealer to cut his product) and that the
defendant was caught with the drugs in a high school at a time when, ac-
cording to expert testimony, drug transactions in a high school often occur.
[414-416]

COMPLAINT received and sworn to in the Cambridge Division
of the District Court Department on May 28, 2002.

The case was tried before *Michele B. Hogan,* J.

*Craig F. Iannini* for the defendant.

*Sheryl F. Grant,* Assistant District Attorney, for the
Commonwealth.

KANTROWITZ, J. The defendant, Remel Ahart, was convicted
by a six-person jury of possession of cocaine with intent to
distribute, G. L. c. 94C, § 32A(*a*), in a school zone, G. L.
c. 94C, § 32J. On appeal, he argues that (1) the evidence
introduced was only sufficient to prove possession, not intent to
distribute; and (2) the substance taken from him was not the
substance alluded to in the drug certificate. We affirm.

*Facts.* On May 28, 2002, at approximately 11:00 A.M., school
officials at Arlington High School brought Ahart, a seventeen
year old student, to the principal's office, whereupon one detec-
tive and one police officer from the Arlington police department

arrested him on an outstanding, unrelated warrant. After being patted down for weapons, Ahart was handcuffed and taken to the Arlington police station, where he was again searched. A razor blade in his front pants pocket was seized. Upon inquiry, while denying that he had any other weapons or contraband, Ahart reached into his back pants pocket with his right hand, and upon withdrawing his hand, held it in a fist. After he refused the detective's order to open his closed hand, a brief struggle ensued, resulting in the seizure of ten individually wrapped bags, each containing a rock-like substance, which the detective recognized as "crack" cocaine. The detective also seized thirty-two dollars in cash. The State laboratory later identified the contents of the bags as cocaine.[1]

At trial, the Commonwealth offered as evidence the testimony of the two police officers, the razor blade, the cash, the bags of cocaine, and the accompanying certificate of analysis completed by the State laboratory in accordance with G. L. c. 111, § 13. Detective Joseph Connors of the Waltham police department was also called as an expert in the distribution and packaging of cocaine in high schools.

Connors testified, in part, about the modus operandi of high school, as opposed to street, drug dealers. While street dealers rely on pagers and cellular telephones, items often banned in schools, knowledge of drug availability there is gained via word of mouth, with the ultimate sale being consummated during a free break or at lunch. More to the point, it was also established that a high school student carrying ten individually wrapped bags of crack cocaine (with a street value of $200 to $400), possessing a razor blade but no smoking paraphernalia, at 11:00 A.M. (prior to lunch) on school grounds, is a scenario consistent with the intent to distribute drugs, as opposed to the intent to use them. Lastly, Connors testified, the razor was significant in that dealers often use razors to cut rocks of cocaine into smaller sizes prior to packaging and distribution.[2]

*Intent to distribute.* When a relatively small amount of drugs

---

[1]The certificate of analysis indicated that the substances analyzed were "powder."

[2]Connors also testified that ten bags of crack cocaine were more consistent with distribution than personal use. He observed that only an addict would

is at issue — here ten rocks weighing 1.87 grams — additional evidence is generally required to prove an intent to distribute. "While in some of the cases cited and relied upon by the Commonwealth lesser amounts of drugs were in issue, there was evidence in addition to the drugs themselves which was susceptible of an inference of the intent to distribute and which was inconsistent with the notion of personal use." *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 423-424 (1982). See *Commonwealth* v. *Roman*, 414 Mass. 642, 645-647 (1993), and cases cited.

In *Commonwealth* v. *Martin*, 48 Mass. App. Ct. 391, 392 (1999), the defendant was caught with eighteen individually wrapped packages of crack cocaine, weighing 2.04 grams. His conviction for possession with intent to distribute was affirmed, the court ruling that "[w]hile 2.04 grams is a small amount, the defendant's intent to distribute could be inferred not from the amount but from the manner of packaging and the general circumstances, including the fact that the defendant was spotted at a location high in drug activity, and the vigor of his attempt to avoid apprehension — an attempt that could reasonably be thought excessive for a mere user." *Id.* at 392-393. Of additional significance was the expert testimony given. *Id.* at 392.

In *Commonwealth* v. *Gonzales*, 33 Mass. App. Ct. 728, 731 (1992), the defendant possessed ten individually wrapped bags of heroin, totaling .32 grams. "The drugs that were seized were in ten glassine packets held together by an elastic band. Such packaging was considered to be a bundle which, according to the [expert] testimony, was consistent with distribution rather than personal use." *Ibid.* Contrast *Commonwealth* v. *Wooden*, *supra* at 422-424 (six bags of marijuana and six bags of cocaine, weighing 23.44 and 6.63 grams respectively, insufficient); *Commonwealth* v. *Tripp*, 14 Mass. App. Ct. 997, 998-999 (1982) (eight bags standing alone insufficient).

---

consume "ten — fifteen rocks a day," and that if a high school student were to smoke that quantity of crack, he would "probably be incoherent, he wouldn't be able to function." Connors also noted that an addict would not typically "buy crack and save it up" because "as soon as they have it they smoke it right away, get rid of it all, and go try and score some more." Furthermore, he testified that without a pipe, the person would have no way to ingest the drug.

Taking the totality of the circumstances into account, sufficient additional evidence, supplementing the ten bags of crack cocaine, was presented justifying the verdict of the jury. The defendant, a seventeen year old high school student, carried on his person not only drugs worth from $200 to $400 but also a razor, the use of which, according to expert testimony, enables drug dealers to cut their product. It is also significant that he was caught with the drugs at 11:00 A.M., thirty minutes before lunch, a time when, according to the expert, transactions often occur.

The defendant's attempt to isolate each piece of the Commonwealth's evidence as insufficient is unavailing. The sufficiency of the Commonwealth's evidence must be viewed in its totality, not piecemeal, as the defendant suggests. See *Commonwealth* v. *Rivera*, 44 Mass. App. Ct. 452, 454 (1998) ("In view of all of the circumstances, the evidence was amply sufficient to warrant submission of the issue of the defendant's intent to distribute the cocaine to the jury for resolution"). See also *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 429 (1985).[3]

*Judgments affirmed.*

---

[3]The defendant's other argument concerning the drug certificate indicating powder, rather than rock, cocaine is foreclosed by *Commonwealth* v. *Whitlock*, 39 Mass. App. Ct. 514, 520-521 (1995).