NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-45

COMMONWEALTH

vs.

BLAKE M. CADET.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was charged with annoying or accosting another in violation of G. L. c. 272, § 53, after he approached and spoke to a fifteen year old girl on her way home from work. A District Court judge allowed the defendant's motion to dismiss, concluding that the evidence in the complaint application failed to establish probable cause.  We reverse.

Background.  We view information set forth in the complaint application in support of probable cause in the light most favorable to the Commonwealth.  Commonwealth v. Leonard, 90 Mass. App. Ct. 187, 190 (2016).  Here, the application established probable cause to believe the following facts.

In July 2023, the victim was working at Market Basket when, about an hour before the end of her shift, she noticed the defendant looking at her in a "strange" way. When her shift ended, the victim started to walk home. The victim heard a man call out, "Hey, Market Basket [g]irl! This is our first date." The victim turned around and recognized the man as the defendant, who had been staring at her in Market Basket. The defendant approached the victim and began asking for her phone number. The defendant identified himself as "Lucius." The victim informed the defendant that she was only fifteen years old and asked him to leave her alone. The defendant continued to "badger" the victim for her phone number, stating, "I have a car I can pick you up in for a date." Fearing that the defendant would harm her if she did not comply, the victim provided him with her mother's phone number, claiming it was her own. Before leaving the victim, the defendant shook her hand and stated, "I'll take my time with you."

The victim returned home and reported the incident to her mother. Shortly thereafter, the mother received a text message stating, "It's Lucius I think Minnie could look good on you," with a photo of a pair of Minnie Mouse sneakers.

The victim and her mother reported the incident to the police. An officer determined that the telephone number from which the text originated was registered to the defendant. The

2

officer then reviewed the defendant's records and found a history of similar incidents.

Discussion. The Commonwealth contends on appeal that the complaint application contained enough information to support probable cause for the crime of annoying and accosting another. "[P]robable cause exists where . . . the facts and circumstances within the knowledge of police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." Leonard, 90 Mass. App. Ct. at 190, quoting Commonwealth v. Stewart, 469 Mass. 257, 262 (2014). See Commonwealth v. Salvatore, 103 Mass. App. Ct. 605, 610 (2023). "A demonstration of probable cause 'requires more than mere suspicion but something less than evidence sufficient to warrant a conviction.'" Leonard, 90 Mass. App. Ct. at 190, quoting Commonwealth v. Roman, 414 Mass. 642, 643 (1993).

"A motion to dismiss for lack of probable cause 'is decided from the four corners of the complaint application.'" Leonard, 90 Mass. App. Ct. at 190, quoting Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013). "The complaint application must include information to support probable cause as to each essential element of the offense." Humberto H., 466 Mass. at 565-566.

The crime of annoying or accosting another occurs when a person "with offensive and disorderly acts or language accost[s]

3

or annoy[s] another person." G. L. c. 272, § 53. Pursuant to the statute, "offensive" and "disorderly" are distinct elements. Commonwealth v. Sullivan, 469 Mass. 621, 625 (2014). We address them in turn.

1. Offensive. To constitute "offensive" acts or language, the defendant's conduct must satisfy three criteria. First, offensive acts or language must contain "sexual conduct or language," either explicitly or implicitly. Sullivan, 469 Mass. at 625-626. Implicit sexual conduct or language is that which "a reasonable person would construe as having sexual connotations." Id. at 626. Second, offensive acts or language must cause the victim "to feel displeasure, anger, resentment, or the like." Id. at 625. Third, offensive acts or statements are those that "would be considered indecent or immoral by a reasonable person." Id.

First, it is reasonable to infer the defendant's acts or statements were sexual in nature. See Sullivan, 469 Mass. at 625-626. The Commonwealth contends the defendant's language asking the victim on a "date" and "badgering" her for her number were sexual. Additionally, the Commonwealth argues the defendant's act of shaking the victim's hand after they were already engaged in conversation and stating, "I'll take my time with you" had a sexual connotation. Regardless of whether this conduct was explicitly sexual, an objectively reasonable person

4

could construe it as having a sexual connotation, in light of the multiple references to having "dates," the effort to get the victim to be alone with the defendant ("I have a car"), and the defendant's statement that he would "take his time with" the victim.  See id. at 626.

Second, it is reasonable to infer the defendant's acts or language caused the victim to feel displeasure.  See Sullivan, 469 Mass. at 626.  The police reports state the victim felt "afraid" and "shocked at his sexual advances," "very nervous and in complete awe due to the defendant being so much older and a stranger," "very nervous because she was young and very uncomfortable," and "so afraid that if she said no, he would do something to her."

Third, such acts or language would be considered indecent or immoral by a reasonable person.  See Sullivan, 469 Mass. at 626.  The police reports state the victim told the defendant that she was only fifteen years old and asked him to leave her alone.  Despite her request, and despite his being much older, the defendant continued an unwanted, implicitly sexual conversation.

In sum, there was probable cause to believe the defendant's acts and language were offensive.

2.  Disorderly.  Disorderly acts or statements are those that "involve fighting or threatening, violent or tumultuous

5

behavior, or that create a hazardous or physically offensive condition for no legitimate purpose of the actor." Sullivan, 469 Mass. at 626, quoting Commonwealth v. Chou, 433 Mass. 229, 233 (2001). Conduct is disorderly if it is "physically offensive" or "threatening." Chou, 433 Mass. at 233-234. "Context is critical" when analyzing whether a defendant's acts or language "creates a physically offensive condition or is threatening." Sullivan, 469 Mass. at 628, quoting Commonwealth v. Ramirez, 69 Mass. App. Ct. 9, 16 (2007). We evaluate whether the defendant's conduct would be physically offensive or threatening to a fifteen year old girl.

A condition is "physically offensive" if it would "cause a reasonable person to fear imminent physical harm," but "physical contact with a victim's person is not necessary [quotation omitted]." Sullivan, 469 Mass. at 627. Because the police reports state the victim "turned around" when she heard the defendant call out, they suggest the defendant approached the victim from behind. It is reasonable to infer the defendant was following her that day or knew her route from having followed her previously.

We need not decide, however, whether the defendant's conduct was "physically offensive" to a teenage girl. See Sullivan, 469 Mass. at 627. This is because there was probable cause to believe the defendant's conduct was threatening.

6

"[L]anguage properly may be understood and treated as a threat even in the absence of an explicit statement of an intention to harm the victim as long as circumstances support the victim's fearful or apprehensive response."  Chou, 433 Mass. at 234.  Moreover, "[a] stranger's unbidden suggestion of sexual activity is inherently menacing, for it invades a very private zone."  Commonwealth v. Moran, 80 Mass. App. Ct. 8, 10 (2011).

In Ramirez, this court discussed what constitutes a threat; a threat "includes 'an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat'" (emphasis added).  Ramirez, 69 Mass. App. Ct. at 20 (defendant's conduct not threatening where he watched girl at swimming pool and sang he "fell in love with a little girl" as she passed), quoting Commonwealth v. Troy T., 54 Mass. App. Ct. 520, 524 (2002).  But Ramirez does not require in every case an expression of intent to commit a crime or to do harm.  Rather, Ramirez recognizes that "a threat can be made without deployment of words explicitly stating one's intent to do harm, so long as the circumstances support the complainant's fearful response."  Ramirez, 69 Mass. App. Ct. at 20-21, citing Chou, 433 Mass. at 234.  See generally Criminal Model Jury Instructions for Use in the District Court 6.600 (2024).

As we concluded above in our discussion of the "offensive" element of the crime, it is reasonable to infer the defendant's acts and statements were sexual in nature. See Chou, 433 Mass. at 234; Moran, 80 Mass. App. Ct. at 10. The victim interpreted the defendant's statement to mean he "wanted to do sexual things to her body," and an objective, reasonable person could have reached the same conclusion.

It is also reasonable to infer that the surrounding circumstances supported the victim's fearful response. See Chou, 433 Mass. at 234. The police reports suggest the victim was walking alone when the defendant, a stranger, approached her from behind. The victim was fifteen years old, while the defendant appeared much older. It was reasonable to infer that the defendant followed the victim from Market Basket or knew her route from having followed her from work previously. Unlike in Ramirez, where the defendant maintained a distance from the victim when he called out to her, here the defendant came right up to the victim, touched her hand, and said, "I'll take my time with you." See Ramirez, 69 Mass. App. Ct. at 10. The defendant was close enough to the victim for her to fear he would physically harm her. The police reports state that the defendant continued to "badger" the victim for her phone number even after she asked him to leave her alone. Out of fear that the defendant would harm her if she did not comply, the victim

8

gave him her mother's phone number, pretending it was her own. The circumstances supported the victim's feelings of fear.

Because it is reasonable to infer the defendant's acts and language were sexual in nature, and because the circumstances, as described in the complaint application, support the reasonableness of the victim's fear, there was probable cause to believe the defendant's acts and language were threatening and thus disorderly.  See Chou, 433 Mass. at 233.

Conclusion.  There was probable cause to believe the defendant's acts and language satisfied both the "offensive" and "disorderly" elements of the offense.  Sullivan, 469 Mass. at 625.  Therefore, it was error to dismiss the complaint.

Judgment dismissing complaint reversed.

By the Court (Sacks, Englander & Grant, JJ.[1]),

Clerk

Entered: November 1, 2024.

---

[1] The panelists are listed in order of seniority.